**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROY M. McLAUGHLIN, JR. (#399370)** | **CIVIL ACTION** |
| **VERSUS** | |
| **DARYL VANNOY, ASS'T WARDEN, ET AL.** | **NO. 11-0526-BAJ-DLD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 11, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROY M. McLAUGHLIN, JR. (#399370)** | **CIVIL ACTION** |
| **VERSUS** | |
| **DARYL VANNOY, ASS'T WARDEN, ET AL.** | **NO. 11-0526-BAJ-DLD** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motions for Summary Judgment of defendants Daryl Vannoy, Chad Menzina, Greg Foster and Kenneth Harris, rec.doc.nos. 18 and 33. These motions are opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Ass't Warden Daryl Vannoy, Ass't Warden Chad Menzina, Lt. Col. Greg Foster, Capt. Kenneth Harris (erroneously identified as Capt. "Kevin" Harris in the original Complaint), and Sgt. Joshua Mabus, complaining that the defendants violated the plaintiff's constitutional rights, commencing in November, 2010, by failing to protect him from harm at the hands of one or more co-inmates and by thereafter denying him appropriate medical attention for injuries resulting from the co-inmates' assault(s).[1]

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, certified copies of excerpts from the plaintiff's medical records and mental health

---

1. Attempts by the United States Marshal's Office to serve defendant Joshua Mabus have proven unsuccessful because, upon delivery of the Summons and Complaint to the last known address of this defendant, as reflected in the records of the Louisiana Department of Public Safety and Corrections, service was refused because defendant Mabus had deployed to Iraq in April, 2012, and was not expected to return for more than six (6) months. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendant Joshua Mabus be dismissed, without prejudice.

records, a certified copy of excerpts from the plaintiff's Master Prison Record, a certified copy of the plaintiff's administrative remedy proceedings (including excerpts from the plaintiff's medical records, written statements executed by Sgt. Richard Howlett, Sgt. Kenneth Johnson, Sgt. Nathaniel Murray, and defendants Greg Foster and Chad Menzina, a disciplinary report dated December 1, 2010 (authored by Capt. John Hughes), and copies of excerpts from the plaintiff's tier logbook for the dates November 24 to December 3, 2010), a certified copy of the plaintiff's Canteen records for the dates November 22 and 29, 2010, a certified copy of the plaintiff's Yard, Shower and Tier Rosters for the dates November 21-30, 2010 (excluding November 26, 2010, because the pertinent document apparently could not be located), and the affidavits of Rhonda Z. Weldon, Eli Wilson and Kelley Hawkins.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries his burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that he is entitled to a verdict in his favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

It appears from the allegations of the plaintiff's Complaint that on November 21, 2010, he was assaulted in his cell by a co-inmate who was outside the cell. Specifically, the plaintiff alleges that he was leaning against the bars of his cell when the offending co-inmate "stealthly sneaked up to plaintiff's cell," pulled and twisted the plaintiff's arm through the bars of the cell, and punched the plaintiff "one time." A second co-inmate in an adjacent cell then became verbally abusive to the plaintiff and urged the attacking inmate to continue. The plaintiff alleges that he thereafter requested health care request forms from the sergeant assigned to the tier, defendant Joshua Mabus, but was told by defendant Mabus, over the course of the next several days, that no health care forms were available. In addition, the plaintiff alleges that defendant Mabus advised the plaintiff on November 23, 2010, that the offending co-inmate was threatening to attack the plaintiff again. According to the plaintiff, this threat was entered into the tier logbook by defendant Mabus. The next day, November 24, 2010, the plaintiff allegedly gave a folded letter to defendant Capt. Kevin Harris, detailing the attack and requesting to be moved from the tier. Defendant Harris, however, took no action and later denied any recollection of having received the referenced letter. According to the plaintiff, this conduct by defendant Harris' was motivated by racial animus. The next day, November 25, 2010, the plaintiff addressed a second letter, this one to defendants Darryl Vannoy and Chad Menzina. As a result of this second letter, which defendant Menzina admittedly did not receive until November 30, 2010, defendant Menzina allegedly sent defendant Harris to question the plaintiff and, as a result of such questioning on the morning of November 30, 2010, the plaintiff was finally moved from the tier on that date.[2] The plaintiff complains, however, that he was thereafter issued a wrongful disciplinary report, was placed in protective custody, and was

---

2. See the plaintiff's Administrative Grievance, attachment to rec.doc.no. 18-3, wherein he acknowledges that defendant Menzina received the plaintiff's letter "[o]n Tuesday morning November 30, 2010 ... [and] had Captain Harris come talk" to the plaintiff, resulting in the plaintiff's transfer on that date.

assigned to a cell in the "dungeon" at LSP. He further complains that he never received a copy of the referenced disciplinary report. Notwithstanding, he acknowledges that he was released from the "dungeon" on December 7, 2010, and was told that the referenced disciplinary report had been dismissed. Finally, with regard to medical care, the plaintiff alleges that on December 2 and 3, 2010, he spoke, respectively, to Major Chad Oubre and Mental Health Officer Dave Ankenbrand (neither of whom are named as defendants herein), told them about the attack, and "showed some of the bruising on plaintiff's body." Thereafter, he was called to the office of defendant Lt. Col. Greg Foster on December 3, 2010, and defendant Foster had the plaintiff transported to the prison infirmary on that date, where the plaintiff's bruises were allegedly documented and photographed.

In addition, to the foregoing, the plaintiff also complains of events allegedly occurring in April, 2011. Specifically, he asserts that he forwarded correspondence on April 7, 2011, to a social worker at LSP, Courtney Washington (not named as a defendant herein), and indicated that he wished to discuss his anxiety and "emotional issues" relative to the events of November, 2010. According to the plaintiff, Ms. Washington assured the plaintiff that an appointment would be scheduled for the plaintiff, but the referenced appointment never took place. In addition, on April 11, 2011, the plaintiff allegedly submitted a health care request form, complaining of continuing pain and swelling in his left elbow. Although an x-ray of his elbow was subsequently scheduled for April 23, 2011, the plaintiff voluntarily refused to undergo that procedure. He complains, however, that an anti-inflammatory medication which was prescribed for him on April 12, 2011, was not given to him until April 25, 2011. Finally, the plaintiff asserts that on April 21, 2011, he was approached by an LSP security officer, Lt. Hunt (not named as a defendant herein), who urged the plaintiff to voluntarily withdraw the administrative grievance which the plaintiff had filed against LSP security officers relative to the foregoing. The plaintiff asserts that he refused to withdraw the referenced grievance.

In addressing the plaintiff's claims, the defendants initially contend that the plaintiff has failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to certain of his claims. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a lawsuit in federal court relative to prison conditions. This provision is mandatory and applies broadly to "all suits about prison life". Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a lawsuit relative to prison conditions. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" Johnson v. Johnson, supra.

Upon a review of the plaintiff's pertinent administrative grievance, the Court concludes that the defendants' argument is well-founded. Specifically, the plaintiff complains in the referenced administrative grievance only of events occurring between November 24, 2010, when he allegedly gave a folded letter to defendant Harris detailing an alleged assault by a co-inmate and requesting to be moved from the tier, and December 3, 2010, when the plaintiff allegedly finally received medical attention for his complaints. There is no mention in the grievance of any prior wrongdoing by defendant Joshua Mabus (who is not named in the grievance), and the only mention in the grievance regarding events preceding November 24, 2010, is a statement therein that the plaintiff "had been requesting a medical request form [from unidentified prison personnel] ... for at least a week prior to being moved." In the Court's view, this latter statement is not sufficient to apprise prison officials of specific wrongdoing by any specific security officer prior to November 24, 2010,

and accordingly, the Court concludes that such claim involving defendant Mabus has not been administratively exhausted. In addition, there is no reference whatever in the plaintiff's grievance relative to any wrongdoing by defendant Daryl Vannoy (who is also not mentioned in the grievance) and no reference to the plaintiff's alleged wrongful placement in the LSP "dungeon" after November 30, 2010. Finally, there is no reference in the grievance relative to events allegedly occurring after December 3, 2010. These claims as well, therefore, have not been administratively exhausted and are subject to dismissal for this reason.

As to events occurring between November 24 and December 3, 2010, and involving the remaining defendants, Kenneth Harris, Chad Menzina and Greg Foster, the defendants next contend that, to the extent that the plaintiff has named the defendants in both their individual and their official capacities, he has failed to state a claim against them in their official capacities. In this regard, the defendants are correct that 42 U.S.C. § 1983 does not provide a federal forum for litigants who seek a remedy against state officials acting in their official capacities inasmuch as these parties are not seen to be persons under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In addition, in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against state officials in their official capacities for monetary damages is treated as a suit against the State and is therefore barred by the Eleventh Amendment. Accordingly, while the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable, his claim for monetary damages against the defendants in their official capacities is subject to dismissal.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make a sufficient

non-conclusory showing of conduct on the defendants' part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id.[3]

Undertaking the Saucier analysis, the Court concludes that the defendants' motions should be granted. First, the plaintiff fails to allege any actual wrongdoing by defendant Greg Foster. All that the plaintiff asserts relative to this defendant is that the defendant called the plaintiff to his office on December 3, 2010, and when the plaintiff explained about having been attacked by a co-inmate and having received no medical attention thereafter, defendant Foster immediately ordered the plaintiff transported to the prison infirmary for an evaluation of his injuries. The plaintiff does not allege that defendant Foster otherwise had notice of either the alleged assault of November 21, 2010, or of the plaintiff's alleged need for medical attention thereafter. To the contrary, the plaintiff concedes that, when defendant Foster was informed by the plaintiff of the pertinent events, the defendant immediately took action to address the plaintiff's medical needs. This does not state a

---

2. The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

basis for liability as to defendant Foster.  Further, inasmuch as this defendant may not be held liable under § 1983 for the actions of subordinate officers or co-employees, <u>Lozano v. Smith</u>, 718 F.2d 756 (5th Cir. 1983), it is clear that this defendant is entitled to summary judgment as a matter of law.

Similarly, the plaintiff's allegations relative to defendant Chad Menzina are not sufficient to support a finding of liability as to this defendant in connection with the plaintiff's claim of a failure to protect the plaintiff from harm.  All that the plaintiff alleges as to defendant Menzina is that on November 30, 2010, the defendant received correspondence written by the plaintiff on November 25, 2010, advising of the inmate assault of November 21, 2010, and complaining that his request to be removed from the tier had not been honored by defendant Kenneth Harris.  According to the plaintiff, defendant Menzina then sent defendant Harris to question the plaintiff about the assault, and this questioning, which took place on the morning of the same day, resulted in the plaintiff being transferred to another cell tier on that date.  The plaintiff makes no suggestion that defendant Menzina had any notice, prior to November 30, 2010, of the referenced assault, and it appears, therefore, that this defendant may not be held accountable for events occurring prior thereto. Accordingly, this defendant is entitled to summary judgment in connection with this claim.

Turning to the plaintiff's failure-to-protect claim asserted against defendant Kenneth Harris, the Court finds that, although the issue is a closer one, the plaintiff has failed to make a showing sufficient to defeat the defendant's claim of qualified immunity relative to this claim.  In this regard, the plaintiff's allegations relative to this defendant implicate the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in the form of an unreasonable threat of harm or violence at the hands of other inmates.  <u>Jones v. Diamond</u>, 636 F.2d 1364 (5th Cir. 1981); <u>Johnston v. Lucas</u>, 786 F.2d 1254 (5th Cir. 1986).  While not every prison fight is actionable, courts have recognized that there may be liability in connection with this cause of action where there exists on the part of a defendant security officer an intent to cause the plaintiff harm or at least a conscious

or callous indifference to the plaintiff's right to be protected from such harm. Johnston v. Lucas, supra. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Specifically, the official must have both been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn the inference. Id. Further, in appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk. Id.

Applying this standard to the plaintiff's allegations and to his evidentiary showing in the instant case, the Court finds that the defendant is entitled to summary judgment as a matter of law. In his Complaint, the plaintiff alleges that his arm was twisted and he was punched "one time" by a co-inmate on November 21, 2010, and that another inmate shouted verbal abuse at the plaintiff and verbal encouragement to the offending co-inmate. The plaintiff does not allege that defendant Harris had prior notice of the impending altercation or any reason to anticipate conflict between the referenced inmates. In fact, the plaintiff provides no factual basis for defendant Harris to have had any knowledge whatever of the incident until three days later, on November 24, 2010, when the plaintiff allegedly handed the defendant a folded and sealed letter, outlining the attack and requesting a transfer to another tier. The plaintiff concedes, however, that he did not provide verbal notice to defendant Harris of the incident at that time or make any verbal request for a transfer or for protection from the offending co-inmate(s). Nor does the plaintiff assert that he observed defendant Harris read the referenced letter, receipt of which the defendant denies. Instead, the plaintiff merely asserts that he wrote another letter the next day, November 25, 2010, this one addressed to defendants Vannoy and Menzina, and that defendant Harris returned to the tier five days later, on November 30, 2010, at the request of defendant Menzina, and had the plaintiff transferred to another tier on that date.

Based on the foregoing, the Court finds that there is an insufficient factual basis upon which to conclude that defendant Harris was deliberately indifferent to a substantial risk of serious injury to the plaintiff which the defendant ignored.  Specifically, the plaintiff is unable to establish that the non-verbal written communication which he allegedly provided to defendant Harris on November 24, 2010, a copy of which has not been produced, was read by defendant Harris or was sufficient to place defendant Harris on notice of such substantial risk.  Moreover, and more importantly, it does not appear from the record that the plaintiff suffered any harm in fact as a result of the alleged inaction by defendant Harris.  In his Complaint, the plaintiff makes reference only to a single incidence of force inflicted by a co-inmate on November 21, 2010, when the plaintiff's left arm was pulled through the bars and twisted and when he was punched "one time" by the co-inmate.  This incident occurred prior to any notification being given to defendant Harris of impending harm, and the plaintiff does not allege <u>in the Complaint</u> that there were any other incidences of force committed by co-inmates on the tier.  Although there are references in the plaintiff's administrative grievance and in the pertinent medical record to one or more co-inmates allegedly throwing things into the plaintiff's cell during the ensuing days, preceding his transfer from the tier, there is no suggestion in the record that the plaintiff suffered any harm or injury as a result of these subsequent events or that he complained to any security officer about them.  To the contrary, the plaintiff's medical records are consistent with only the single incidence of force alleged, inasmuch as they reflect only "yellowish" bruising on the plaintiff's left arm and in one area of his left chest.  Accordingly, it does not appear that defendant Harris' alleged inaction caused or contributed to any injuries received by the plaintiff in this case, and in the absence of any harm or damage resulting from the defendant's conduct, there is no basis for the imposition of liability against this defendant in connection with the plaintiff's failure-to-protect claim.

Finally, the plaintiff also asserts that the defendants are responsible for having failed to attend to his medical needs resulting from the alleged attack by the co-inmate.  In this regard, the

law is well-settled that in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, supra. As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The deliberate indifference standard is high: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Further, a delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Applying the foregoing standard, the Court concludes that the plaintiff also fails to establish liability on the part of the moving defendants in this case relative to this claim. Whereas the plaintiff asserts that he addressed correspondence to defendant Harris on November 24, 2010, and to defendants Vannoy and Menzina on November 25, 2010, he describes this correspondence as "describing how plaintiff had been attacked" and as requesting to be moved off the tier. The plaintiff does not allege that he asserted therein any need for medical attention or any concern that medical

attention was being denied to him. When he was thereafter called to the office of defendant Foster on December 3, 2010, and allegedly advised the defendant that no medical attention had been provided to him, defendant Foster had the plaintiff transported to the prison infirmary on that date. In short, there is no basis for concluding that any of the moving defendants were placed on notice of the plaintiff's alleged need for medical attention or that they ignored an apparent need for such attention. Although the plaintiff appears to suggest that the defendants, upon merely learning of the alleged attack by a co-inmate, should have taken it upon themselves to pro-actively determine that the plaintiff had been provided with medical attention, this does not follow from the plaintiff's allegations. To the contrary, there are recognized procedures on each cell tier for inmates to request and obtain medical attention, and the moving defendants had no apparent reason to be concerned that the plaintiff had not or would not avail himself of these procedures. Although the plaintiff asserts that for two days after the attack, between November 21 and 23, 2010, he was told by defendant Joshua Mabus that no health care request forms were available, the plaintiff does not allege that he spoke to any other security officers during subsequent shifts, to health care personnel who visited the tier every day, or to security personnel on the tier to which he was transferred on November 30, 2010. In fact, when he did receive medical attention on December 3, 2010, he merely indicated that he wanted his injuries documented, and he refused all proffered treatment and tests. In the absence of any indication in the record, therefore, that the plaintiff provided actual notice to any of the moving defendants prior to December 3, 2010, that he was in need of medical attention or that such attention had been denied to him, the plaintiff's claim of deliberate medical indifference as to these defendants must fail.[4]

---

3. The plaintiff also includes in his Complaint an allegation that the reason defendant Harris took no action to assist the plaintiff in response to the plaintiff's letter and complaints was because this defendant "had and/or has racist motives." This assertion, however, is entirely conclusory and is not supported by any factual basis. The law is clear that mere conclusory allegations, without any factual development, corroboration or support, are not sufficient to support a claim of liability under § 1983. See Hamilton v. Service King Auto Repairs, 437 Fed.Appx. 328 (5th Cir. 2011).

**RECOMMENDATION**

It is recommended that the plaintiff's claims asserted against Joshua Mabus be dismissed, without prejudice, for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Motions for Summary Judgment of defendants Daryl Vannoy, Chad Menzina, Greg Foster and Kenneth Harris, rec.doc.nos. 18 and 33, be granted, dismissing the plaintiff's claims asserted against these defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 11, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**